United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 14, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 05-20979

)))))))))))))))))))))))))))

IDA KEELE,

             Plaintiff-Appellant,

      v.

JP MORGAN CHASE LONG TERM DISABILITY PLAN; LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

             Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas
No. H-04-0327

---

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

Per Curiam:[*]

      Plaintiff-Appellant Ida Keele ("Keele") appeals a district

court order granting summary judgment to Defendants-Appellees JP

Morgan Chase Long Term Disability Plan ("JP Morgan") and Liberty

Life Assurance Company of Boston ("Liberty") (collectively,

"Defendants"). The district court concluded that Liberty, the

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

plan administrator for JP Morgan, did not abuse its discretion by denying Keele's application for long-term disability benefits. Because we agree that Liberty did not abuse its discretion, we AFFIRM the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Keele, an employee of Chase Manhattan/Texas Commerce Bank, was a participant in short-term and long-term disability insurance plans administered by Liberty. Keele initially applied for short-term disability benefits in March 2001, claiming that she had a "bone spur pinching nerves in [her] neck." When those benefits expired, she applied for long-term benefits in September 2001 and received interim payments while a final decision on her claim was pending. In January 2002, Liberty denied Keele's long-term disability claim on the basis that her condition was not "disabling," as defined by the Liberty benefits policy. Under the Liberty plan, long-term disability benefits are available to a claimant who is "unable to perform all of the material and substantial duties of [her] occupation on an Active Employment basis because of an injury or sickness." Liberty concluded that, following two surgeries, Keele's condition was stable, and she was able to perform her duties as a "Currency Clerk Specialist."

Liberty informed Keele that she could request a review of the denial if she did so within sixty days and "[i]nclude[d] documentation such as medical treatment notes and diagnostic test

2

results that contradict those currently in [her] file, as well as any other medical documentation" that would support her claim. On February 13, 2002, Keele requested review of Liberty's decision to deny her benefits, claiming that Liberty had given inadequate consideration to the opinion of her family doctor, Dr. Buescher, that she was unable to work due to constant pain, as well as to the opinions of several other of her doctors. However, Keele did not include any new medical records or other documents in support of her claim. On March 13, 2002, Liberty reminded Keele of the necessity of supplying additional medical information and granted her an additional thirty days in which to do so.

Before the expiration of that deadline, Keele submitted to Liberty additional records from two new doctors, Dr. Orellana and Dr. Bessire, as well as records from her dentist, Dr. Taylor, detailing treatment between December 2002 through April 2002. Six weeks later, after the deadline expired, Keele submitted further documentation from Dr. Buescher relating to her chronic facial pain. On June 18, 2002, Liberty informed Keele that it had denied her appeal. Liberty stated that there was insufficient medical data "to support a degree of impairment or limitation of her functional capacity, which would preclude [her] from the material and substantive duties of [her] occupation as Currency Clerk Specialist." Liberty also stated that evidence revealed no "conditions, such as trigeminal neuralgia or other specific neurological condition to explain" her complaints of continued

pain.

Eighteen months later, in December 2003, Keele sent another set of medical records to Liberty in the hope of reviving her claim. These record were from two other neurologists, Dr. Sharlin and Dr. Briggs, who treated her from November 2002 to October 2003. Keele argued that these doctors had diagnosed her condition as trigeminal neuralgia and that therefore Liberty should reconsider its denial of her claim. Liberty refused Keele's request for an additional review. Subsequently, Keele filed suit in the United States District Court for the Southern District of Texas. Keele claimed that Liberty erred by refusing to consider the new medical evidence she submitted and that Liberty abused its discretion by denying her benefits claim.

The district court referred the case to a magistrate judge for pre-trial management under 28 U.S.C. § 636(b)(1)(A) and (B). Thereafter, both Keele and the Defendants filed motions for summary judgment. The magistrate judge filed a Memorandum and Recommendation proposing that Keele's motion be denied and the Defendants' be granted. Keele timely filed objections. On September 27, 2005, the district court issued an Order Adopting the Magistrate Judge's Memorandum and Recommendation, thereby granting summary judgment in favor of the Defendants. This appeal by Keele followed.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1291. We

4

review a district court's grant of summary judgment de novo. Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002). Summary judgment is proper when the pleadings, discovery responses, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When deciding whether there is a genuine issue of material fact, this court must view all evidence in the light most favorable to the non-moving party. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001).

Keele's request is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, which authorizes federal court review of such benefit decisions. See Gooden v. Provident Life & Acc. Ins. Co., 250 F.3d 329, 332 (5th Cir. 2001). ERISA benefit plan decisions are reviewed under a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where, as the parties agree is the case here, the administrator's discretionary authority is clear under the terms of the benefits plan, we review the administrator's decision for "abuse of discretion." Ellis v. Liberty Life Assur. Co., 394 F.3d

5

262, 269 (5th Cir. 2004). "In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously." Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 214 (5th Cir. 1999). Thus the decision to deny ERISA benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial." Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 299 (5th Cir. 1999)(en banc).

Additionally, if the complaining participant shows that the plan administrator has a conflict of interest, then judicial review is less deferential than an ordinary abuse of discretion review. Id. at 297. Here it is not disputed that Liberty was acting both as the plan administrator and the insurer with regard to Keele's claim. Accordingly, Liberty's decisions are entitled to less than full deference, in order to "neutralize any untoward influence resulting from the conflict." Id. at 296.

### III. DISCUSSION

On appeal, Keele argues that the district court erred in concluding that there was no genuine issue of material fact regarding whether Liberty abused its discretion by denying Keele's claim for long-term benefits.

Keele claims that under this court's holding in Vega, the additional documentation that she submitted eighteen months after her appeal was denied became part of the administrative record in

6

the case, and that Liberty's failure to review this material indicated that its decision was not "fair and informed." The Defendants deny that this material has become part of the administrative record and argue that Liberty was in no way required to review it.

This dispute raises an interesting question regarding the reach of statements made by this court in Vega. There, we addressed whether a party whose insurance claim had been denied by a plan administrator could present new evidence to the district court. We declared that:

> Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it. . . . If the claimant submits additional information to the administrator, however, and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record. . . . Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative record.
>
> We hold today that the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it.

Id. at 300.

These passages suggest that new evidence submitted by the claimant becomes a part of the administrative record even if it is submitted after the administrator has reached its final decision. Read thusly, these passages conflict with prior cases in which we indicated that the administrative record consisted of

7

those documents before the administrator at the time the claims decision was made. See, e.g., S. Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 102 (5th Cir. 1993); Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822, 827 (5th Cir. 1996).[1] This interpretation of Vega also poses a number of practical problems, some of which were nicely elucidated by the Eastern District of Louisiana in Needham v. Tenet Select Benefit Plan, No. Civ.A. 02-3291, 2004 WL 193131, at *7 (E.D.La. Jan. 30, 2004). There, the district court questioned:

> Does an administrator *ipso facto* abuse its discretion by refusing to reconsider its decision after the administrative appeal process is concluded? At what point, if any, may an administrator close its file and simply refuse to consider new evidence? If an administrator legitimately may take this position eight months after denying a claimant's appeal, is it not inconsistent with the abuse of discretion standard of review for the Court to then judge the reasonableness of the denial in light of evidence submitted post hoc?

The Defendants helpfully suggest that the time frame in which a claimant can submit new evidence to the administrator is limited by the language "in a manner that gives the administrator a fair opportunity to consider it" from Vega. 188 F.3d at 300. The Defendants contend that Keele's documents, submitted eighteen months after her claim was closed, were not submitted in "a

---

[1] We do not mean to imply that these earlier decisions take precedence over Vega, which is an en banc decision. We simply point out that if Vega allows into the record evidence submitted after the administrator has reached a final decision, this holding implicitly alters what had been a settled point in our jurisprudence.

8

manner that g[ave] the administrator a fair opportunity to consider" them. This key language from Vega has not been interpreted by this court, though the Defendants' position has support from at least one district court opinion. See Schaffer v. Benefit Plan of Exxon Corp., 151 F. Supp. 2d 799, 809 (S.D. Tex. 2001) (suggesting that evidence submitted two years after a claim was denied was not submitted "in a manner that gives the administrator a fair opportunity to consider it"). Alternatively, however, one could read this phrasing from Vega as referring to the length of time between the claimant's submission of the new evidence and subsequent filing of suit in federal court. Such an interpretation is consistent with the overriding concern of Vega, which was to "encourage the parties to resolve their dispute at the administrator's level." 188 F.3d at 300.

We need not decide this question of Vega's precise requirements today, because we conclude that the documents in dispute do not change the disposition of the case. Indeed, the district court considered the late-submitted documents "in an abundance of caution," and still determined that there was no material issue of fact regarding whether Liberty had abused its discretion. The district court found that Keele had failed to produce evidence that her medical condition prevented a return to her duties as a Currency Clerk Specialist, which included sitting for up to six hours a day, data entry for up to seven hours, use

9

of fine finger dexterity for up to six hours, lifting items weighing twenty-to-thirty pounds about five times per day, and bending and reaching for thirty minutes a day. The district court concluded that Keele had not produced sufficient documentation evidencing her restricted physical capacity to establish her disability. After careful review of the record, we agree with the district court.[2]

Statements by several of Keele's doctors, as well as by Keele herself, imply that Keele was able to perform many of the duties required by her employment. For example, on March 31, 2001, Keele completed a form stating that she was capable of sitting for fifteen hours per day, standing for two hours per day, walking for fifteen minutes per day, and driving for two hours per day. On October 26, 2001, Dr. Buescher indicated that Keele had a functional capacity of Class 5 (incapable of minimum activity). Two days later, however, Dr. Buescher completed a form stating that Keele could lift up to ten pounds, could sit for eight hours per day, could stand, and could walk, bend, and kneel infrequently. On January 7, 2002, Dr. Mims, Keele's surgeon,

---

[2] Keele suggests that if Vega requires that the record include the late-submitted documents, and Liberty refused to review those documents, then Liberty's decision was *per se* an abuse of discretion, and summary judgment was improper. We disagree with that logic, because the reviewing court's task was to assess Liberty's June 2002 decision finally denying Keele's claim, not Liberty's December 2003 decision to not review additional documents.

signed a letter stating that he "found no basis precluding Ms. Keele from returning to work at her own occupation as a currency Clerk Specialist on a full time basis."[3]

The strongest evidence for Keele's disability comes from the above-mentioned October 26, 2001 report by Dr. Buescher and a April 24, 2002 letter by the same doctor stating that Keele was unable to perform the tasks required by her occupation and was "unable to work" because she was "in pain all the time." But Dr. Buescher's October 26, 2001 report was contradicted by his written statements from two days later, and his April 24, 2002 letter came six months after he last had examined Keele. Moreover, Dr. Buescher's diagnoses were unaccompanied by objective medical data.

Keele points to Liberty's statement in its June 2002 letter that her evidence revealed no "conditions, such as trigeminal neuralgia or other specific neurological condition to explain" her complaints of continued pain. She argues that her subsequently submitted documentation contains several diagnoses of her condition as trigeminal neuralgia, thus requiring Liberty to reverse its denial of her claim. The absence of a diagnosis, however, was not Liberty's sole reason for denying Keele's claim--more significant was her failure to produce documentation

---

[3] This letter was prepared by Liberty's consulting physician, Dr. Brown, after a conversation between her and Dr. Mims on December 21, 2001.

of her physical limitations. The documents submitted late by Keele do include a diagnosis of trigeminal neuralgia, but they do not contain additional information concerning restrictions on her ability to perform the duties of her occupation. Indeed, Keele's neurologist, Dr. Sharlin, noted in January 2003 that Keele was happy with the current management of her trigeminal neuralgia.

We therefore agree that Liberty's decision to deny Keele's claim for long-term disability benefits was supported by sufficient evidence to render that decision neither arbitrary nor capricious. Keele has failed to show a material issue of fact regarding whether Liberty abused its discretion.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court granting summary judgment to the Defendants.

AFFIRMED.

12