IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 7, 2007

Charles R. Fulbruge III
Clerk

No. 06-11324

DANA MARTIN

Plaintiff-Appellant

V.

SBC DISABILITY INCOME PLAN

Defendant-Appellee

Appeal from the United States District Court for the
Northern District of Texas, Dallas Division
USDC No. 3:05-cv-00729

Before DAVIS, STEWART, and OWEN, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Plaintiff Dana Martin appeals the judgment of the district court granting summary judgment in favor of defendant SBC Disability Income Plan and dismissing her claims for disability benefits against defendant. For the reasons set forth below, we reverse and remand.

I.

For more than nineteen years, Dana Martin was employed by SBC Advanced Solutions, Inc. as a data center technician. In February 2004, she

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sought short-term disability benefits under the SBC Disability Income Plan ("SBC DIP") for psychiatric problems. Claims under this plan are processed by the SBC Medical Absence & Accommodation Resource Team ("SMAART"). After a series of requests for information, submission of medical records, denials and appeals, SBC DIP approved short term disability payments for Martin through July 26, 2004.[**] Benefits after that date were denied because "clinical information does not document a severity of your condition(s) that support your inability to perform your occupation as a Data Services Technician from 7/26/2004 through your return to work date." The determination was based on a review of medical documentation provided by Martin's treating physician, Dr. Lucas, on July 21, 2004. The letter notes the following bases for the denial:

> Dr. Lucas does report symptoms of agitation with impaired focus and attention span. You also appear agitated and worried. The treatment plan involves referral to a appropriate day program. Participation in a day program has not taken place at this time.
>
> Your claim file was forwarded to our Physician Advisor for review. An attempt was made to schedule a verbal review of your file with Dr. Lucas, but was unsuccessful. However a review of your file did show no at risk behavior, your judgment and thought processes are noted as intact and your speech is normal.

The denial letter notes that for Martin to perfect a claim, she should contact Dr. Lucas for additional medical information, which may include "a detailed Mental Status Exam, testing that may support cognitive dysfunction and a detailed treatment plan." The Physician Advisor referred to in the letter was Dr. Goldman.

---

[**] Much of the facts set forth in the briefs deal with Martin's medical records for the period prior to July 26, 2004. However, as Martin's appeal relates to the period after July 26, 2004, during which disability benefits were largely denied, we focus on the medical records relating to that period.

Martin appealed and submitted a letter from one of her treating doctors, Dr. Lucas, dated June 18, 2004, in support. On September 7, 2004, Martin was hospitalized after a suicide attempt (drug overdose). She remained hospitalized for approximately three weeks. Medical records submitted in support of Martin's disability claim for the period after July 26, 2004 include

* documentation of her hospital stay,

* progress notes from Dr. Lucas for July 7, 2004 to August 30, 2004,

* a September 29, 2004 report from Dr. Donaldson (to whom Martin was referred by Dr. Lucas), and

* progress notes from Dr. Lucas for a visit with Martin on September 29, 2004.

Dr. Donaldson's report states

> Results of the clinical interview, observations made during therapy sessions and telephone calls, and test results obtained from administering the Minnesota Multiphasic Personality Inventory-II (MMPI-II), all support the diagnosis of Bipolar II Disorder, Most Recent Episode Depressed, and Posttraumatic Stress Disorder.

The report lists the symptoms exhibited by Ms. Martin to support each diagnosis. Dr. Donaldson described Martin as "agitated, depressed and tearful, appearing barely able to function, and only able to perform the most basic activities of daily living." Donaldson concluded

> In my clinical opinion, patient is unable to work at this time or in the foreseeable future. Her work includes interacting with the public, driving a company vehicle, multiple responsibilities and detailed recordkeeping. These duties would be difficult for her to perform due to her impaired ability to concentrate.

SMAART submitted Martin's records to Dr. Robert Polsky for review. Dr. Polsky concluded that

> There was no clear clinical documentation indicating her to pose any acute risk to self or others, be psychotic or be unable to perform the

activities of daily living. There are no formal mental status examination findings that would substantiate problems with memory, cognition, or concentration. . . . Therefore the findings do not support an inability for Ms. Martin to perform job duties from 07/26/04 to the present.

Appeals specialist Pat Melycher, who reviewed Dr. Polsky's report and Martin's other medical records for SMAART, approved benefits from September 6 through September 27, 2004, to cover the period of Martin's hospitalization following her suicide attempt. However, other benefits were denied because

> Medical documentation does not support your inability to perform your essential job duties from 7/26/04 through 9/5/04 and from 9/28/04 through your return to work date. It was noted that after reviewing all medical documentation that there were no objective clinical findings to support your inability to perform your essential job duties during the denied period of that time. Medical documentation does not state that you were a danger to yourself or others, were psychotic, or unable to perform your activities of daily living. There were no findings from a formal mental status examination to substantiate that you were, or are, having problems with memory, cognition, or concentration.

> Although some findings on examination are evident, none are documented to be so severe as to prevent you from performing the job duties of Data Service Technician or any other available job assigned by the Company from 7/26/04 to 9/5/04 through your return to work.

Because Martin had no further avenue to appeal this decision with SBC DIP, she filed suit. The district court decided the case on SBC DIP's motion for summary judgment. It granted judgment in favor of SBC DIP on the basis that

> Martin has failed to point to evidence in the record that shows any abuse of discretion on the part of the defendant. Even if the court were to give the administrator's decision less than usual deference, there is a rational connection between the decision to deny Martin's benefits and the recommendation of Dr. Polsky, which was based on all of the medical submissions regarding Martin's claim. Therefore,

Martin has failed to establish a genuine issue of material fact relating to any abuse of discretion on the part of the defendant.

Martin appeals.

## II.

The district court decided this case on summary judgment. Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In this circuit, an ERISA plan administrator's factual determinations are reviewed for abuse of discretion. Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 226 (5th Cir. 2004). A plan administrator abuses its discretion if it acts arbitrarily or capriciously. Meditrust Financial Services Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 214 (5th Cir. 1999). When reviewing to determine whether the administrator's decision was arbitrary or capricious, the court should affirm the decision if it is supported by "substantial evidence." Id. at 215. A decision is arbitrary, and thus not supported by substantial evidence, if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." Id., (citing Bellaire General Hospital v. Blue Cross Blue Shield, 97 F.3d 822, 828-29 (5th Cir. 1996)).

SBC DIP's decision to deny benefits to Martin for most of the period following July 26, 2004 is based on what it views as an absence of evidence to support a finding of disability. The denial letter cites a lack of "objective clinical findings to support your inability to perform your essential job duties," and an absence of "findings from a formal mental status examination to substantiate that you were, or are, having problems with memory, cognition, or concentration." The letter also cites that "[m]edical documentation does not state that you were a danger to yourself or others, were psychotic, or unable to perform your activities of daily living." The denial letter was based on Dr.

Polsky's report which concluded that Martin was not disabled from 7/26/04 to the date of the report, despite a three week hospitalization resulting from a suicide attempt during that interval. Dr. Polsky concluded that Martin was not disabled because there were "no formal mental examination findings that would substantiate problems with memory, cognition, or concentration" and "no clear clinical documentation" that she was "unable to perform the activities of daily living."

Based on our review of the record, these conclusions do not reflect a rational connection between the known facts and the decision to deny benefits. The primary direct evidence of Martin's condition from July 26, 2004 to the date further benefits were denied was the report of Dr. Donaldson, the physician who was treating Martin during that time. Martin underwent a Minnesota Multiphasic Personality Inventory-II test. Based on that test and her clinical findings Dr. Donaldson diagnosed Martin's condition as Bipolar II Disorder, Most Recent Episode Depressed, and Posttraumatic Stress Disorder. The report lists sysmptoms exhibited by Martin that support these diagnoses. Dr. Donaldson's observations are consistent with Martin's other doctor, Dr. Lucas. The report states that Martin has outbursts of anger and difficultly concentrating, is barely able to function and only able to perform the most basic activities of daily living. It also notes that Martin is unable to work because the basic functions of her job, interacting with the public, driving a company vehicle, multiple responsibilities and detailed record keeping, would be difficult for Martin to perform because of her impaired ability to concentrate. It is impossible to reconcile Dr. Polsky's report and the denial letter's complaint of lack of objective evidence supporting Martin's inability to perform her job with Dr. Donaldson's report.

This is not a situation in which the reviewing physician reached a different medical conclusion from the medical evidence in the beneficiary's file or where

other evidence of the claimant's condition contradicts the diagnosis of the treating physician.  For example in Sweatman v. Commercial Union Insurance Co., 39 F.3d 594 (5th Cir. 1994), the reviewing physician found that the patient's lab work refuted a diagnosis of rheumatoid arthritis.  In addition, a private investigator observed the patient taking care of her wheelchair bound spouse and moving with no apparent restrictions or obvious signs of impairment.  Under those facts, the insurer did not abuse its discretion in denying benefits based on its own investigation and the reports of its medical consultants.  In Vercher v. Alexander & Alexander Inc., 379 F.3d 222 (5th Cir. 2004), the reviewing physician found that the claimant's file contained no objective evidence of the claimed neuromuscular or psychiatric impairment which precluded continued employment. Additional evidence also supported the plan administrator's denial of disability benefits.  Vercher claimed disability resulting from injuries sustained in a prior auto accident.  Her own physicians had recommended medical retirement.  However the reviewing physician found that Vercher had put forth less than maximal effort during a Functional Capacity Assessment. The administrator also noted that Vercher had worked for more than four years after her initial injury in the auto accident, during which time she accepted a promotion, performed in her new position for nearly two years while taking minimal days off for her claimed injuries.  This court found no abuse of discretion in the denial of long-term disability benefits for Vercher.

In this case, it is clear that the claim of no objective clinical findings to support Martin's claim of disability by the plan administrator and reviewing physician is inconsistent with the medical records SBC DIP admits having during its review of Martin's claim.  SBC DIP did not reasonably and appropriately rely on Dr. Polsky's report because it clearly did not accurately reflect the facts in Martin's medical record.  In addition, there is no medical evidence in the record related to the period after July 26, 2004, when Martin's

claim for disability was largely denied, that refutes or undermines the reports of Martin's treating physician. Neither the plan administrator nor the reviewing physician dispute the diagnosis of the treating physicians and they present no evidence that contradicts the treating physician's conclusion that Martin is barely able to function and cannot perform her work duties. Under the facts of this case, SBC DIP abused its discretion in denying disability benefits to Martin and the district court erred in granting summary judgment in favor of SBC DIP on this record.

## III.

For the foregoing reasons the summary judgment of the district court rejecting Martin's claim for short term disability benefits is reversed. We remand this case to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.