# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 14, 2010

Lyle W. Cayce
Clerk

No. 09-30333

DENNIS ANDERSON,

Plaintiff – Appellant

v.

CYTEC INDUSTRIES INC,

Defendant – Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

PER CURIAM:

Dennis Anderson appeals the district court's denial of his ERISA claim for short-term disability benefits. Because we agree with the district court that the ERISA plan administrator did not abuse her discretion in denying the benefits, we affirm.

## FACTS AND PROCEEDINGS

In 1976, Dennis Anderson began working at a chemical plant owned by Cytec Industries (Cytec) in Waggaman, Louisiana. By 2005, he was working as a "panel operator," running the computers and machinery that manufacture sulfuric acid. The job requires sharp concentration and attention to detail. In August 2005, Anderson and his wife, who is disabled and wheelchair-bound,

No. 09-30333

were displaced by Hurricane Katrina. The hurricane destroyed their New Orleans home and most of their possessions. They moved to Atlanta and have not returned to New Orleans.

Anderson served in the Vietnam War, where he saw combat, and in the first Gulf War. He developed post-traumatic stress disorder (PTSD) as a result of his military service, but was able to manage it with medication and treatment while he worked at Cytec. Anderson did not have his medication with him when he evacuated before the hurricane. Approximately four weeks after arriving in Atlanta, he began receiving outpatient treatment at a specialized PTSD clinic at the Atlanta Veterans Affairs Medical Center. Treatment notes from the psychiatrist and nurse who were treating Anderson describe an increase in PTSD symptoms, including nightmares, intermittent auditory hallucinations, and irritability. Anderson was prescribed medication and began attending a weekly support group for PTSD patients.

Cytec's facilities sustained some wind damage but were not flooded by the hurricane. The plant reopened within several weeks. The company set up trailers for employees whose homes were damaged and offered to place Anderson in one of them. He declined. He reported, on several occasions, that he could not return to work because he could not leave his wife in Atlanta and because of the difficulty of finding appropriate housing for her in New Orleans. Cytec paid Anderson his regular salary through September 9, 2005.

As a Cytec employee, Anderson was enrolled in two disability benefits programs, the Short-Term Disability Plan (STDP) and the Long-Term Disability

No. 09-30333

Plan.[1]    Cytec directs applications for STDP benefits to a third-party administrator for an initial benefits determination.[2]  While the STDP itself is not clear about the number of appeals available to claimants, Anderson was allowed two: one with third-party claims administrator Broadspire and a final appeal with Carol Van Rensalier, a Cytec human resources executive designated as the company's plan administrator.

The STDP requires an employee to have a "total disability" or be "totally disabled" to receive disability benefits.  It defines "total disability" and "totally disabled" as "the complete inability of the Participant, due to sickness, injury or pregnancy, for which the Participant is and remains under the care of a licensed physician, to perform any and every duty pertaining to his occupation with his Employer and/or any similar occupation which his Employer may provide."[3]

Anderson applied for STDP benefits in early October 2005.  He supported his claim with a form filled out by his treating psychiatrist, Dr. Aida Saldivia.  Dr. Saldivia noted that Anderson "has an increase in symptoms of PTSD due to

---

[1] The parties agree that both plans are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (ERISA).  Although he asks this court to award both short- and long-term benefits, Anderson did not contest Cytec's assertion that it does not underwrite or administer the long-term program and thus is not the proper defendant in a suit for long-term disability benefits.  Thus, we address only the STDP claim and take no position on the merits of any claim for long-term benefits Anderson may have.

[2] Cytec initially used the third-party administrator Broadspire Services, Inc. (Broadspire) to handle STDP claims.  Later, it switched to Aetna, which received the documents Anderson sent after Cytec denied his final appeal.

[3] The STDP contains a choice of law provision that requires questions "pertaining to the construction, regulation, validity and effect" of the plan's provisions to be determined in accordance with New Jersey law.  New Jersey law employs the standard contract doctrine that the terms in an agreement "are to be given their plain and ordinary meaning."  *M.J. Paquet, Inc. v. N.J. Dep't of Transp.*, 794 A.2d 141, 152 (N.J. 2002).  The parties do not dispute the meaning of any of the terms in the STDP.

No. 09-30333

evacuation from [New Orleans]—he's having difficulty sleeping, having flashbacks and mood is depressed. He has difficulty concentrating and focusing on any one task." The form showed that Anderson was unable to perform one test for "cognition/memory" but was able to complete other cognitive tests. The form also indicated that Anderson was able to go about the "activities of daily living" without assistance; in fact, during the time period in question, Anderson was actively involved in caring for his wife. Dr. Saldivia prescribed medication, noted that Anderson's plans to return to work were "undetermined at this time," and stated that Anderson's symptoms had intensified and "rendered him incapable of performing job duties." The administrative record does not indicate whether Dr. Saldivia reviewed Anderson's formal job description.

In late October, Broadspire's initial review found support for a functional impairment, and Broadspire approved STDP benefits for Anderson from September 27, 2005—the day Anderson first sought treatment—through November 21, 2005. At the same time, Broadspire decided to send the case for an independent "peer review" and to seek additional documentation from his care providers to determine whether to continue benefits past November 21. The company was skeptical of the extent of Anderson's functional limitation, especially considering his repeated statements—before he sought treatment—that he could not return to work because he could not secure adequate housing for his wife in New Orleans. The administrative record shows that Anderson was aware of the requirement that he keep Cytec informed of his medical status, but he did not send any additional forms documenting his

4

ongoing disability from Dr. Saldivia or any other treating physician while his case was under review.[4]

Dr. Elana Mendelssohn, Psy.D., conducted the initial independent peer review. She examined Anderson's treatment records from September and October 2005, the form completed by Dr. Saldivia, and Anderson's job description; she did not personally examine Anderson. She spoke with Dr. Saldivia on November 8, but noted that Dr. Saldivia could not recall who Anderson was. Dr. Saldivia did not get back in touch with Dr. Mendelssohn after she faxed Dr. Saldivia a copy of the form Dr. Saldivia had filled out in support of the benefits claim. Dr. Mendelssohn found that Anderson's medical records did "not support a functional impairment." She considered the symptoms Anderson had reported but stated that "it was unclear how these symptoms were impacting [Anderson's] functionality"; she emphasized the lack of "specific examination findings or behavioral observations" that would substantiate an impairment in cognitive or psychological functioning. Dr. Mendelssohn acknowledged that the nurse who saw Anderson during his bi-weekly visits had noted the presence of impaired memory and concentration, but Dr. Mendelssohn also stated that treatment notes from the PTSD group therapist had shown intact thought processes and intact memory, "which is inconsistent with [the nurse's] report." In conclusion, Dr. Mendelssohn wrote that the documentation she reviewed "primarily includes self-reported complaints and clinical impressions," and that the "[e]xamination findings fail

---

[4] After his benefits were cut off, Anderson did have some therapy notes forwarded to Broadspire. He states in his brief that he thought his health care providers were sending in the requisite updates but acknowledges that they had not done so.

to describe a psychological condition impacting the claimant's functioning to such a degree to preclude him from performing his own occupation."

In December 2005, Broadspire denied an extension of Anderson's STDP benefits. The denial letter cited Dr. Mendelssohn's conclusion that there were no examination findings or behavioral observations that showed the presence of an impairment in psychological functioning sufficient to prevent Anderson from working. Anderson appealed and had 38 additional pages of progress notes from Steven Barrett, his therapist, sent to Broadspire. Broadspire then instituted a second independent peer review, this one conducted by Dr. Lawrence Burstein, who holds a Ph.D. in psychology. Dr. Burstein reviewed Anderson's medical file, the prior peer review conducted by Dr. Mendelssohn, and Anderson's job description.

Dr. Burstein found that the medical records did not support a finding of functional impairment that would have precluded Anderson from working from November 21, 2005 through early March 2006, when he completed his review. Like Dr. Mendelssohn, Dr. Burstein found that the medical records documented Anderson's subjective complaints and the impressions of his clinicians, but that they did not "contain specific examples of the claimant's behavior or measurements of the claimant's cognitive functioning to support these impressions." He also noted that no other information was available. Broadspire informed Anderson that his appeal was denied in March 2006. Like the earlier denial letter, the appeal denial stated that Anderson's physician's opinion that he would be unable to cope with the stress of his job was not supported by examples of behavior or measures of cognitive functioning showing a functional impairment that would prevent Anderson from working.

Anderson appealed again. His final appeal was handled by Cytec's plan administrator, Van Rensalier. She denied relief on July 10, 2006. Van Rensalier's letter to Anderson upheld Broadspire's earlier denials for largely the same reasons. In May 2006—while Anderson's final appeal was pending—Cytec terminated his employment.

Anderson's mental health underwent a temporary but severe downturn after Cytec's final denial of his STDP claim. Auditory hallucinations that had plagued him intermittently intensified, and Anderson voluntarily entered inpatient treatment after recognizing signs of "homicidal ideation" toward his former employer. He was released several days later, and he continued to attend group therapy sessions.

In 2007, after retaining counsel, Anderson attempted to submit additional materials to Cytec in further support of his STDP claim, including medical records from July 2006 to early 2007 and two brief notes from Veterans Affairs psychiatrists stating that Anderson was "completely unable to work" and "totally disabled." The evidence from the period after the denial of Anderson's final appeal is mixed: along with documentation of Anderson's temporary breakdown, it includes notations showing that Anderson stated he was hopeful that his union representatives would "be able to make his case for him and get his job back" and a complaint that he had lost his job "because he could not leave his handicapped wife in Atlanta." The post-denial medical records also include a statement that Anderson was capable to return to work; Anderson claims that this was a mistaken notation by an intern.[5]

---

[5] The parties dispute whether these records and the two doctors' notes should be treated as part of the administrative record. The last records were not sent until almost one year after Cytec's final denial of Anderson's claim. They were also never received by Cytec,

No. 09-30333

After getting no response from Cytec, Anderson filed suit in September 2007. He brought claims for reinstatement of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and breach of fiduciary duty pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2).[6]

The parties filed cross-motions for judgment on the administrative record. After deciding to consider the administrative record as it stood at the time of Anderson's last appeal—and to ignore the additional material Anderson mailed in afterwards—the district court found that the plan administrator did not abuse her discretion in denying the disability benefits and dismissed the case. Anderson timely appealed.

## STANDARD OF REVIEW

This court reviews *de novo* the district court's conclusion that an ERISA plan administrator did not abuse its discretion in denying benefits, *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008), and in doing so reviews the plan administrator's decision from the same perspective as the district court, *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999). Where a benefits plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," as the STDP does here, the reviewing court applies an abuse of discretion standard to the plan administrator's decision to deny benefits. *Firestone Tire &*

---

due in part to confusion about whom the documents should have been mailed to—confusion engendered largely by Cytec. The district court did not include the documents sent to Cytec in 2007 as part of the administrative record. Because we hold that Cytec did not abuse its discretion, even considering the "extended" administrative record, we have no need to decide whether the late-submitted documents were properly part of the administrative record.

[6] Anderson does not contest the district court's dismissal of his cause of action for breach of fiduciary duty.

*Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc), *abrogated in part by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). This is the functional equivalent of arbitrary and capricious review: "[t]here is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context." *Meditrust Fin. Servs.*, 168 F.3d at 214 (quotation omitted). A decision is arbitrary if it is "made without a rational connection between the known facts and the decision." *Id.* at 215 (quotation omitted). This court owes no deference, however, to an "administrator's unsupported suspicions." *Vega*, 188 F.3d at 302.

In addition to not being arbitrary and capricious, the plan administrator's decision to deny benefits must be supported by substantial evidence. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).

> Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (quotations omitted); *see also Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (stating that the administrator's decision must be "based on evidence, even if disputable, that clearly supports the basis for its denial" (quotation omitted)). "Ultimately, [this court's] review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end." *Corry*, 499 F.3d at 398 (quotation omitted).

No. 09-30333

Finally, the court must take into consideration the conflict of interest inherent in a benefits system in which the entity that pays the benefits—here, Cytec—maintains discretionary control over the ultimate benefits decision. *See Glenn*, 128 S. Ct. at 2348–51; *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 n.3 (5th Cir. 2009). In *Holland*, we explained that the Supreme Court's decision in *Glenn* "directly repudiated the application of any form of heightened standard of review to claims denials in which a conflict of interest is present." 576 F.3d at 247 n.3. Instead, this court weighs the structural conflict as one of the many factors relevant to the benefits determination decision. *Glenn*, 128 S. Ct. at 2351. Like the plaintiff in *Holland*, Anderson has not come forward with any evidence that Cytec's conflict of interest influenced its benefits decision. *See* 576 F.3d at 249. Additionally, Cytec employed a third-party benefits administrator that consulted independent experts in reviewing Anderson's claim. Although the facts here are different from those in *Holland*, we agree with Cytec that any conflict of interest is not a significant factor. *See id.*

## DISCUSSION

### A. Cytec's decision to deny benefits

As a claimant under § 1132(a)(1)(B), Anderson bore "the initial burden of demonstrating . . . that [the] denial of benefits under an ERISA plan [was] arbitrary and capricious." *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993). We conclude that he failed to do so.

The evidence Anderson presented to Cytec and to Cytec's third-party benefits administrator while they were considering his STDP application and subsequent appeals was, as the district court correctly characterized it, mixed. Broadspire's two independent experts reviewed evidence supporting a diagnosis

of PTSD that had been aggravated by the trauma of Anderson's experience in the aftermath of Hurricane Katrina. That evidence consisted of both self-reported symptoms and the observations of Anderson's treating physician, nurse, and therapist. The reviewing experts did not question the PTSD diagnosis or downplay the significance of Anderson's self-reported symptoms of depression, persistent nightmares, flashbacks, hallucinations (which he reported during early visits but repeatedly denied in most subsequent visits), and anxiety, or the observation that Anderson's concentration was "impaired."

Also in the administrative record, however, is evidence that Anderson had been able to work while managing his PTSD symptoms, pre-Katrina, through medication and therapy; statements by Anderson that he could not return to New Orleans and to his job because he could not find suitable housing for his wife; a nearly four-week gap between Anderson's evacuation to Atlanta and his first date of treatment (during which time Anderson was without his medication); some evidence that Anderson's situation improved at least marginally after he began treatment; and numerous treatment notes from Anderson's therapist describing his judgment and insight as fair and his thought processes and memory as intact. In light of these facts, it was not unreasonable for Cytec to request an initial review by an independent expert or to require Anderson to support his claim with regular updates. Nor was it unreasonable to ask for some objective showing that Anderson's PTSD-related disability prevented him from performing his job.

Cytec also did not abuse its discretion by relying on the independent experts' opinion that Anderson had not offered objective clinical proof showing the functional effect of his PTSD. Like the experts in *Corry v. Liberty Life*

*Assurance Company of Boston*, the experts on which Cytec relied took into consideration Anderson's subjective complaints and the conclusions of his doctors. *See* 499 F.3d at 401. But, also as in *Corry*, the experts here were not required to accept the opinion of Anderson's treating physician that his symptoms rendered him incapable of performing his job. *See id.* This was neither arbitrary nor an abuse of discretion: "the administrator, under the established standard of review that restricts the courts, was not obliged to accept the opinion of [Anderson's] physicians. In this 'battle of the experts' the administrator is vested with discretion to choose one side over the other." *Id.*; *see also Simoneaux v. Cont'l Cas. Co.*, 101 F. App'x 10, 12 (5th Cir. 2004) ("Continental was neither irrational nor arbitrary in failing to give overriding weight to the treating physician's statement that [the claimant] was totally disabled, a generalized statement not supported by objective medical findings.").

Anderson's case does bear some factual similarity to *Martin v. SBC Disability Income Plan*, an unpublished decision in which this court reversed the district court's judgment in favor of a plan administrator. 257 F. App'x 751 (5th Cir. 2007). The plan administrator had rejected the claim of a benefits applicant disabled by psychiatric problems, citing the applicant's failure to submit "objective clinical findings to support [her] inability to perform [her] essential job duties" and an alleged absence of "findings from a formal mental status examination." *Id.* at 754. In *Martin*, however, the applicant's doctor had administered a Minnesota Multiphasic Personality Inventory-II test before diagnosing the applicant and described the applicant as "appearing barely able to function, and only able to perform the most basic activities of daily living"; the applicant was also hospitalized for three weeks after a suicide attempt. *Id.* at

No. 09-30333

752–53. Unlike the applicant in *Martin*, Anderson was able to function day-to-day with the help of therapy and prescription drugs; he was also helping to care for his wheelchair-bound wife. We do not find a lack of rational connection between the facts and the denial decision here. The independent experts did not misread Anderson's record or dismiss his complaints out of hand. Like the experts in *Corry*, they simply found it insufficient to support a total disability. Both denial letters from Broadspire made it clear that Anderson needed to submit objective clinical findings to support his claim of total disability.

That request for additional information was not unjustified. A plan administrator does not abuse its discretion by making a reasonable request for some objective verification of the functional limitations imposed by a medical or psychological condition, especially when the effects of that condition are not readily ascertainable from treatment and therapy notes—as in this case and analogous cases involving, for example, chronic fatigue syndrome. *Accord Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007) ("A distinction exists . . . between the amount of fatigue or pain an individual experiences, which . . . is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured."); *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 16–17 n.5 (1st Cir. 2003) (finding an insurance company not unreasonable when it "was willing to accept that [the claimant] suffered from the illnesses she reported to her doctors. . . . [but] wanted objective evidence that these illnesses rendered her unable to work."). Without some objective measurement of Anderson's functional limitations, Cytec had no way to determine whether his concentration was

13

No. 09-30333

impaired to the point that he could not perform his job or "any similar occupation which his Employer may provide."

Between the time his STDP benefits were first cut off and the time he was fired—at which point he was no longer eligible for STDP benefits—Anderson did not submit cognitive testing results or any clinical documentation other than group therapy notes. He also did not have Dr. Saldivia or another treating physician reaffirm to Cytec that he continued to be unable to work, even though the record indicates that he knew Cytec would "require monthly updates" on his status, as the STDP plan allowed it to do. Anderson has not argued that he could not have obtained the kind of tests for functional cognitive disability that the denial letters made clear he would need. In his brief, Anderson asserts that he "attempted as best he could to comply with Cytec's stated appeal requirements." He explains that he "was under the apparent understanding and belief that his treating physicians were providing information to Cytec supporting his ongoing mental disability," but concedes that they were not. While this is highly unfortunate, Cytec is not to blame for the lack of documentation it was within its rights to request.[7]

The second question is whether Cytec's decision is supported by substantial evidence—*i.e.*, "more than a scintilla, less than a preponderance" of relevant evidence. *Corry*, 499 F.3d at 397–98. As explained above, the evidence from the period when Anderson was eligible for STDP benefits is mixed: it does

---

[7] Anderson also notes, in his reply brief, that it would be appropriate to "return to the administrative process and have his physicians address, clarify and definitively confirm his longstanding, ongoing and permanently disabling mental disability." Again, while we sympathize with the extraordinarily difficult situation in which Anderson found himself, Cytec did not abuse its discretion by asking him to submit evidence "definitively confirm[ing]" his alleged total disability while his application was pending.

14

not compel either a finding of total disability or a finding that Anderson could perform his work in spite of his disability. Additionally, Cytec relied on analyses by two independent experts, both of whom opined that the evidence did not, without more, support a finding of total disability. Here, as in *Corry*, the opinions of Cytec's experts, "each of whom are specialists and qualified experts in fields specifically related to [Anderson's] symptoms, constitute substantial evidence" supporting Cytec's STDP determination. *Corry*, 499 F.3d at 402.

Finally, Anderson argues that Cytec should not have relied on two experts who did not hold M.D. degrees and who did not personally examine him. He provides no support for the proposition that, in an ERISA case that turns on a patient's mental status, an expert evaluation by a Ph.D. or Psy.D. psychologist is less probative than that of an M.D. psychiatrist. The argument is baseless; courts regularly consider the expert testimony of psychologists, and parties often introduce competency reports and mental health assessments prepared by both a psychiatrist and a psychologist. *See, e.g.*, *United States v. Palmer*, 507 F.3d 300, 301–02 (5th Cir. 2007); *Mata v. Johnson*, 210 F.3d 324, 328 (5th Cir. 2000). That the independent experts reviewed Anderson's records but did not examine him personally also does not invalidate or call into question their conclusions. In *Black & Decker Disability Plan v. Nord*, the Supreme Court held that plan administrators are not required to give special deference to the opinions of treating physicians. 538 U.S. 822, 831 (2003); *see also Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 233 (5th Cir. 2004).

Under these circumstances, Cytec's decision that Anderson was not "totally disabled" was not arbitrary and capricious and was supported by substantial evidence.

No. 09-30333

## B.     Additional evidence submitted after the final appeal

The parties dispute whether information Anderson mailed to Cytec's third-party benefits administrator in 2007—treatment notes that begin in July 2006, after the denial of his final appeal, and two doctor's letters written in January 2007—should have been included in the administrative record. Anderson argues that the additional material buttresses his benefits claim. Cytec argues that it should not be included in the record and that, in any event, the additional information is irrelevant.

In ERISA cases, courts generally cannot consider evidence outside the administrative record.[8] *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 n.3 (5th Cir. 2006). In *Vega v. National Life Insurance Services, Inc.*, this court, sitting en banc, stated that if a claimant "submits additional information to the administrator . . . and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record." 188 F.3d at 300. The *Vega* court summarized its holding as follows: "the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Id.* Subsequent panels of this court and several district courts within the circuit have wrestled with this language from *Vega*, which could be read to allow claimants to add material to the administrative record long after exhausting their final administrative appeal, even without a showing that the evidence was unavailable to them while

---

[8] There are limited exceptions to the general rule. *See, e.g.*, *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 215 F.3d 516, 521 (5th Cir. 2000). None apply here.

16

No. 09-30333

their administrative appeal was pending or that they made a good-faith effort to discover or submit the information during the administrative process.[9]

Because the late-submitted information is either cumulative of the earlier evidence or largely irrelevant to Anderson's claim for STDP benefits, we need not address the thorny timing issues posed by *Vega*. Assuming *arguendo* that the materials submitted in 2007 could have been part of the administrative record, we do not deviate from our holding that the administrator's decision was not an abuse of discretion.

First, the clinicians' notes and progress reports on Anderson's mental health after his final appeal was denied are weakly relevant, at best, to his mental health during the time period at issue—from September 2005, when Anderson first sought treatment, to May 2006, when he was terminated by

---

[9] *See Corry*, 499 F.3d at 398 n.12 (holding that, under *Vega*, affidavits submitted after a final administrative appeal but more than one year before the claimant filed her federal suit were properly considered part of the administrative record); *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 319–20 (5th Cir. 2007) (noting *Vega*'s departure from prior circuit caselaw and discussing some of the questions left unanswered by the decision (quoting *Needham v. Tenet Select Benefit Plan*, 2004 WL 193131, at *7 (E.D. La. Jan. 30, 2004) (unpublished)); *Schaffer v. Benefit Plan of Exxon Corp.*, 151 F. Supp. 2d 799, 809 (S.D. Tex. 2001) (declining to consider late-submitted evidence as part of the administrative record). Indeed, *Vega* could be read to require ERISA administrators to keep the administrative record open, and to continually consider new information submitted by claimants who have already exhausted the administrative appeals process, almost indefinitely. Such a policy would be a marked change from this court's pre-*Vega* rule, under which the administrative record "consisted of those documents before the administrator at the time the claims decision was made." *Keele*, 221 F. App'x at 320. It would also make this circuit's administrative record law more expansive than that of the rest of the circuits. *Cf. Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 483 (7th Cir. 2009) (describing *Vega* as "an outlier whose reasoning does not stand on firm ground"); *Liston v. UNUM Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003) (noting that "virtually all of the circuits" share the view "that the record on review is limited to the record before the administrator," "with the possible exception of the Fifth Circuit" (citing, *inter alia*, *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636–42 (5th Cir. 1992)). Notably, *Vega* cited *Wildbur* for an even more expansive extension of the administrative record than what *Liston* considered to be outside the mainstream.

No. 09-30333

Cytec, which made him ineligible for STDP benefits. Reports about Anderson's mental health after his eligibility for STDP benefits expired—reports that were not before the independent experts or the plan administrator while they considered his appeals—could not have factored into Cytec's decision to deny benefits, and therefore are not directly relevant to the question whether Cytec abused its discretion by denying Anderson's claim.[10]

Second, the two doctors' letters that Anderson submitted—both dated January 17, 2007—do not change the analysis. One, from a psychiatry resident who the record does not show treated Anderson during any part of the relevant time period, contains little more than the conclusory statements that Anderson "is completely unable to perform work because of his disability since Sept 2005" and is "totally disabled and will be unable to work indefinitely." The second letter is from a psychiatrist who is not shown as treating Anderson elsewhere in the record. It lists his symptoms and states that they "prevent him from performing salient duties of his job as panel board operator or any similar occupation" and that they "are severe enough to warrant complete disability and

---

[10] This is not to say that the evidence has no relevance to Anderson's pre-May 2006 mental state at all. A breakdown may provide *some* post hoc evidence that an individual's pre-breakdown mental health was precarious. But treating such evidence as relevant to the decision we review here assumes that Cytec should have voided its earlier denial in light of events that occurred after it terminated Anderson's employment. Such a decision would have required Cytec to make any number of speculations about the arc of Anderson's mental health status, the relative weight of a short-lived intensification of PTSD symptoms, and whether (and, if so, to what extent) such an increase in symptoms reveals anything about Anderson's ability to perform his job or a similar job during the relevant period. The company also would have had to make a legal decision about whether the STDP allowed for a post-denial, post-appeal benefits adjustment based on information that arose after the completed appeal. That Cytec did not so speculate was not arbitrary or capricious. Additionally, as noted above, the late-submitted clinical notes contained some evidence that favored Cytec, including notations indicating that Anderson was attempting to get his job back and that he was eligible to return to work.

18

intensive treatment in our specialized PTSD clinic." The second letter does not aver that Anderson was unable to perform his job during the relevant period, and it appears to misstate one of Anderson's symptoms as "homicidal ideation"—a symptom the record shows that he exhibited for, at most, several days in July 2006.

The relevance and probative value of both letters is questionable. Only the first and most conclusory letter asserts that Anderson was disabled in 2005 and 2006, and a doctor's statement that an individual "is 'totally disabled' does not suffice to establish disability under the language of the [STDP], a determination which is a legal conclusion left to the Plan administrator." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 656 (5th Cir. 2009). Even if the letters were more clearly relevant to the issue before the court, they would not serve as anything more than additional expert opinions. And as established above, Cytec was not obliged to accept the opinions of Anderson's treating physicians. *See Corry*, 499 F.3d at 401.

Thus, while we do not endorse Cytec's decision to deny benefits as obviously correct, we cannot say that it was an abuse of discretion. *See Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir. 2007). The circumstances of this case are sad and unfortunate. Dennis Anderson served this nation in two wars and undoubtedly faces a difficult disability as a result of that service. But Cytec was entitled to require some evidence of the functional impact of his disability; it did not abuse its discretion by denying further benefits in the absence of such evidence.

## CONCLUSION

The district court's judgment in favor of Cytec is AFFIRMED.