## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 4, 2019

Lyle W. Cayce
Clerk

No. 17-30997

AMANDA C. FOSTER,

Plaintiff - Appellant

v.

PRINCIPAL LIFE INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, DUNCAN, and ENGELHARDT, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

Amanda Foster worked as an attorney in New Orleans before—by her account—intractable migraines made her stop working. She applied for disability benefits through her law firm's insurer, Principal Life Insurance Company ("Principal"). After multiple reviews by various doctors, Principal denied her claim, concluding she was not disabled within the meaning of the policy. Foster sued, arguing that Principal abused its discretion by denying her benefits. The district court ruled for Principal. We affirm.

I.

Foster was a healthcare attorney at the New Orleans law firm Sullivan, Stolier & Knight ("Sullivan"). She began working at the firm in November 2005

and described her duties as "review and draft leases and agreements; research and advise clients regarding government laws and regulations; represent clients in administrative appeals; [and] draft compliance plans." On March 8, 2013, Foster decreased her work hours to part-time capacity, allegedly due to intractable headaches, and she subsequently took complete disability leave on July 1, 2013.

Sullivan has a group benefits plan ("Group Policy" or "policy") issued by Principal, which, as relevant here, provides employees with long term disability benefits ("LTD").[1] It is undisputed that Foster's claims under the policy are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq. See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). It is also undisputed that the policy confers on Principal the discretion to construe the policy provisions and determine eligibility, meaning that Principal is both the insurer and the plan administrator.

With respect to LTD, the policy states that a member is "disabled" if she "cannot perform one or more of the substantial and material duties of his or her Own Occupation." "Substantial and material duties" are "essential tasks generally required by employers from those engaged in a particular occupation that cannot be modified or omitted." The policy defines "Own Occupation" for attorneys as "[t]he specialty in the practice of law the Member is routinely performing for the Policyholder when his or her Disability begins."

---

[1] The policy provides another benefit via its life insurance coverage—known as "Coverage During Disability"—which entitles employees to a waiver of premiums during a period of total disability (known as a "LWOP"). LWOP has different eligibility requirements from LTD: LWOP requires inability to perform the duties of any occupation, whereas LTD requires only an inability to perform any of the material and substantial job duties of one's own occupation. Foster unsuccessfully claimed entitlement to this LWOP benefit in the district court, but she has not appealed the district court's determination that Principal did not abuse its discretion in denying LWOP.

No. 17-30997

On July 8, 2013, Foster filed a claim for LTD under the policy, alleging she was "unable to practice law due to the pain of headaches as of March 8, 2013." An accompanying neurologist's statement (from Dr. Mohnot) described Foster's subjective symptoms as "intractable migraines," and reported March 8, 2013 as the date she was "advised . . . to stop working." Principal received Foster's medical records throughout August 2013, including records of her psychotherapy with Dr. Phyllis Shnaider. Principal then requested a review of the medical records by an internal medical consultant. Principal provisionally approved Foster's claim (after completion of a mandatory 180-day elimination period) from September 4, 2013 to December 9, 2013, based on the information it had at the time, while informing Foster it would need additional information.

On November 4, 2013, Principal requested surveillance on Foster, which showed her performing routine tasks like shopping and picking up children. It also requested updated medical records. Initially, two doctors (Dr. Ethel Condon and Dr. Pranathi Kondapaneni) provided Principal with reports reviewing those records. Dr. Condon's report stated that Foster's "chronic headaches and intractable migraines" would not allow her "consistent full time employment" for "sedentary work." Similarly, Dr. Kondapaneni's report confirmed that Foster was experiencing daily migraines that resulted in her "functional impairment," limiting her to part-time work to avoid continuous "work-place stress and light exposure."

Principal also hired two additional physicians, Dr. Sydney Kroll Register (a psychologist) and Dr. David Hoenig (a neurologist), to review Foster's file. For her part, Dr. Register concluded from a review of the medical records that "[t]here is no indication of functionally impairing psychological symptoms," and she noted "generally mild psychological symptoms consistently across time." She also concluded that "[n]o limitations are supported" that would result in Foster's "total inability to perform any type of occupation." For his

3

part, Dr. Hoenig concluded that Foster's "objective neurological exam is consistently normal," as well as her MRI and EEG. He also concluded that, whereas her headaches were "subjectively affecting her functionality," her records showed "no objective/clinical evidence which demonstrates that Mrs. Foster is functionally impaired," given that she "exhibits no deficits on examination and her neurological workup is normal, [and] . . . she is seen on video surveillance to be functional." Additionally, Dr. Hoenig specifically disagreed with the previous recommendation of Foster's neurologist that she not work: "Based on the documentation provided, . . . the recommendation that [Foster] not work is not reasonable and is not medically supported," given that "[t]here is no clinical evidence that demonstrates that Ms. Foster is functionally impaired." Dr. Hoenig therefore concluded that "Ms. Foster has capabilities to perform work activities on a full-time basis, in a sedentary capacity."

Principal terminated Foster's LTD benefits on December 18, 2014, effective December 9, 2014. In relevant part, Principal's denial letter stated that a report from her reviewing psychologist "indicated that no limitations or functional impairment were supported from a psychological perspective." The letter also stated that her "objective neurological exam was consistently normal," as were her MRI and EEG, and that, despite her complaints of headaches, "there was no objective/clinical evidence which demonstrated [she] w[as] functionally impaired." In other words, Foster's "subjective complaints did not correlate with objective findings" and her "reported functional and daily activity level was not consistent with the severity of the complaints [she] reported." Principal additionally relied on the fact that Foster was "seen on video surveillance to be functional and apparently without activity limitation." Finally, Principal noted that Foster's "monthly online blog posts" reflected an "undiminished ability to write, focus, and concentrate as would also be

required in [her] occupation." In sum, Principal concluded that, "[o]n the basis of these [psychological and neurological] reviews, we have determined that there is no objective medical or psychological evidence supporting an ongoing claim of Disability as it is defined in the policy."

On April 28, 2015, Foster submitted her mandatory appeal to Principal.[2] Foster attached letters from her treating physician Dr. Mohnot, an independent medical examination (IME) by Dr. Shelly Savant, an affidavit by founding partner Jack Stolier attesting to Foster's struggles with her headaches and her inability to work as an attorney, and additional medical records detailing Foster's continued struggle with migraines.

On July 24, 2015, Principal denied Foster's mandatory appeal. As part of this review, Principal relied on the opinions of two more doctors, Dr. Daniel Harrop (a psychiatrist) and Dr. Norman Miller (a psychiatrist and neurologist). While not commenting on neurological issues, which were beyond his expertise, Dr. Harrop concluded that Foster was "not disabled for psychiatric reasons"; that "the psychiatric restrictions suggested by the attending clinicians . . . are not supported by clinical findings or diagnostic evidence or the clinical records on file"; that her "[m]emory, cognition, and concentration are not demonstrated by mental status examinations to be impaired"; and finally that "[t]he medical documentation does not support that there are restrictions and limitations which would render [Foster] unable to perform the occupation she regularly performs[.]" Harrop listed the essential duties of an attorney in his summary of the record in his report.

The second reviewer, Dr. Miller, diagnosed Foster with "opioid dependence," "opioid induced mood disorder," and "opioid induced hypalgesia

---

[2] In accordance with ERISA regulations, the plan required Foster to file (and Principal to consider) one mandatory appeal.

and somatoform disorder." Dr. Miller was the only reviewing physician to suggest these diagnoses. In his report, Dr. Miller explained that "[h]ydrocodone causes pain, particularly headache pain and her pain will be significantly reduced and the frequency of her headaches, the severity of her headaches, the nature of her headaches all will improve once she no long is prescribed and uses hydrocodone." As to Foster's functional impairment, Dr. Miller concluded that "Ms. Foster is otherwise capable of full-time sedentary work" and "she should discontinue under medical supervision hydrocodone and Ativan as these medications increase pain and anxiety and depression." While not listing or discussing any specific duties of an attorney, Miller mentioned those duties in his summary of the record.

Following Principal's denial of Foster's mandatory appeal, Foster filed a second, voluntary appeal in which she submitted, among other materials, responsive opinions by independent examiner Dr. Shelly Savant, and Foster's treating physician Dr. Mohnot, who has treated Foster for migraines since 2008. Dr. Savant vigorously disputed Dr. Miller's diagnoses as incorrect.

After receiving Foster's second appeal, Principal requested additional headache logs from Foster and scheduled an independent neuropsychological examination (INE) with Dr. Michael Chafetz, a psychologist. On December 2, 2015, Dr. Chafetz administered a battery of cognitive function tests, reviewed her records, and conducted a clinical interview. His extensive report observes, among other findings, that various physicians have disagreed "as to the origin and status of [Foster's] headaches," but that physicians have generally ignored her psychological history. Furthermore, Dr. Chafetz observed that Foster "is claiming that her pain condition, which for the most part is moderate, creates an extremely high level of functional restrictions, which is unusual." As a result, he concluded that Foster "would have no limitations on more complex legal tasks if these did not involve much oversight and responsibility." He also

forecast that Foster would "demonstrate the same psychological pattern in the future, developing headaches when faced with responsibilities and tasks that take her away from the things that she would truly enjoy, such as her writing career." However, Dr. Chafetz concluded that "[t]here is no real evidence of psychologically or neuropsychologically based impairment in [Foster's] ability to carry out tasks."

On December 21, 2015, Principal upheld its previous determination that Foster was not disabled within the meaning of the LTD provisions of the policy, based in part on Dr. Chafetz's independent evaluation. The denial letter concluded that Foster was "capable of full-time sedentary work and . . . is able to function at the level needed as an attorney on a regular basis."

On February 12, 2016, Foster filed the instant lawsuit in federal district court seeking both LTD and LWOP benefits under the policy pursuant to 29 U.S.C. § 1132(a)(1)(B). The parties eventually filed cross-motions for judgment on the administrative record. On November 21, 2017, the district court rendered judgment for Principal and against Foster, concluding that Principal did not abuse its discretion when denying Foster's claim for benefits. Foster filed a notice of appeal on December 21, 2017. She moved for reconsideration in the district court under Federal Rule of Civil Procedure 59(e) on December 19, 2017, attempting to introduce additional medical evidence. The district court denied Foster's motion for reconsideration in a memorandum opinion on March 19, 2018.

## II.

"Where a benefits plan 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' . . . the reviewing court applies an abuse of discretion standard to the plan administrator's decision to deny benefits." *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 511–12 (5th Cir. 2010) (quoting *Firestone Tire & Rubber Co. v.*

No. 17-30997

*Bruch,* 489 U.S. 101, 115 (1989)). Here, the parties do not dispute that the policy vested such discretion with Principal. This court reviews *de novo* the district court's conclusion that an ERISA plan administrator did not abuse its discretion in denying benefits. *Crowell v. Shell Oil Co.,* 541 F.3d 295, 312 (5th Cir. 2008); *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 397 (5th Cir. 2007). In doing so, we review the plan administrator's decision from the same perspective as the district court. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 214 (5th Cir. 1999).

"Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'" *Corry*, 499 F.3d at 397–98 (quoting *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004)). Even if an ERISA plaintiff "support[s] his claim with substantial evidence, or even with a preponderance," he will not prevail for that reason. *Ellis*, 394 F.3d at 273. Rather, it is the *plan administrator*'s decision that must be supported by substantial evidence, and, if it is, the administrator's decision "must prevail." *Id.* "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Anderson*, 619 F.3d at 512 (quotation marks omitted). "'A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246–47 (5th Cir. 2009) (quoting *Meditrust Fin. Servs.*, 168 F.3d at 214). "Our 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.'" *Id.* (quoting *Corry*, 499 F.3d at 398).

No. 17-30997

Finally, the existence of a structural conflict of interest—when the plan administrator "both evaluates claims for benefits and pays benefits claims," *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th Cir. 2013) (quotation marks omitted)—"is 'but one factor among many that a reviewing judge must take into account'" in assessing whether the administrator abused its discretion. *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 138 (5th Cir. 2016) (quoting *Holland*, 576 F.3d at 248); *accord Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008). The weight a conflict has relative to other factors "changes . . . depending upon the circumstances of a particular case." *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 470 (5th Cir. 2010) (quotation marks omitted).

## III.

Foster's first argument on appeal is that Principal abused its discretion when terminating her LTD benefits because it failed to analyze her disabling condition in light of her actual job duties as an attorney. The policy Principal issued to Sullivan states that a member will be considered "[d]isabled" if, "because of sickness, injury, or pregnancy," "[t]he Member cannot perform one or more of the *Substantial and Material Duties of his or her Own Occupation* . . . ." (emphasis added). Foster contends that the doctors on whose reports Principal relied were never asked to evaluate her disability in light of her specific duties as a healthcare attorney, and that, instead, they evaluated her disability only in light of the less specific standard of whether she could perform "full-time sedentary work." Consequently, these doctors did not provide any meaningful analysis of whether Foster's intractable migraines would prevent her from performing the specific duties of a healthcare attorney—*e.g.*, "meeting deadlines, handling stress, unpredictability of absences, . . . prolonged computer use, prolonged light exposure, [and the] intellectual challenges of handling complex situations." Relying on those

doctors' opinions, argues Foster, constituted an abuse of discretion because Principal could not have rationally determined from them that Foster was, in fact, unable to "perform one or more of the material and substantial duties of . . . her Own Occupation," as the policy demands.

Our court has not squarely addressed the issue presented here—namely, whether an ERISA plan administrator abuses its discretion by denying benefits under an "Own Occupation" clause based on reports couched only in terms of a claimant's ability to work at "a full-time sedentary position." Several sister circuit decisions suggest that non-specific statements of this nature are inadequate to support a benefits denial under an "Own Occupation" clause. *See, e.g.*, *McDonough v. Aetna Life Ins. Co.*, 783 F.3d 374, 379–82 (1st Cir. 2015) (deeming inadequate "passing references" in medical reviews to "the appellant's 'own occupation' or 'own sedentary level occupation'" when "unaccompanied by any attempt to articulate the material duties of the appellant's own occupation"); *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 619–20 (6th Cir. 2006) (finding inadequate a report's use of "sedentary work," because "the proper inquiry is whether [claimant] could perform her own occupation"); *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 854–55 (3rd Cir. 2011); *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Bos.*, 419 F.3d 501, 507 (6th Cir. 2005) ("[T]he fact that [claimant] might be capable of sedentary work cannot be a rational basis for finding that he was not disabled, given that his former occupation required him to walk, stand, and reach for several hours a day."); *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 253 (2nd Cir. 1999). We have expressed support for this proposition, albeit in an unpublished opinion. *See, e.g., Burtch v. Hartford Life & Acc. Ins. Co.*, 314 F. App'x 750, 755–56 (5th Cir. 2009) (rejecting argument that insurer erred by using "sedentary job" criteria to deny benefits, because insurer "considered the

[claimant's] actual [job] duties" under the policy's "own occupation" standard).[3] We assume without deciding that our sister circuits are correct. Even under the standard adopted by those circuits, we conclude that Principal's termination of Foster's benefits should be upheld.

We evaluate Foster's argument in view of the light burden that Principal bears: Principal must support its decision only with "substantial evidence" and, if the decision "is not arbitrary and capricious, it *must prevail*." *Corry*, 499 F.3d at 397–98 (quoting *Ellis*, 394 F.3d at 273) (emphasis added). Here, there is substantial evidence showing that at least one of the physicians—Dr. Chafetz—considered Foster's disability in light of the specific duties required by her occupation as an attorney. Principal asked Foster for a description of her job duties and then provided to all reviewing physicians the documents she gave them. The reports Principal relied upon described not only "physical," but also on the "non-exertional or cognitive" demands on Foster—such as her "ability to write, focus, and concentrate," her "memory, cognition, and concentration," and her ability to complete tasks such as "driving, shopping, and picking up her kids." Most importantly, Dr. Chafetz was asked to (and did) assess a range of non-exertional, cognitive skills. He concluded that "according to [his] psychological findings, [Foster] would appear to have no limitations on more complex legal tasks if these did not involve much oversight and responsibility." To be sure, Foster adduced evidence of her own suggesting that

---

[3] We also addressed an "own occupation" clause in *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir. 2006). The parties agreed that the clause required assessment of a claimant's disability in terms of the "'essential tasks' generally required of employees in the occupation." *Id.* at 395. We reversed the insurer's benefits denial purely on evidentiary grounds—namely, because the insurer's "finding that driving is not a material duty" of a sales representative was "not supported by concrete evidence in the administrative record." *Id.* at 396. Consequently, we had no occasion in *Robinson* to address whether an insurer's generic assessment that a claimant could perform "sedentary" work is sufficient to support a benefits denial under an "own occupation" clause.

her headaches rendered her unable to perform as an attorney. But that does not entitle her to prevail under the substantial evidence standard. *See, e.g., Ellis*, 394 F.3d at 273 (even if an ERISA plaintiff "support[s] his claim with substantial evidence, or even with a preponderance," he will not prevail for that reason). Accordingly, we find that Principal marshaled enough evidence to satisfy its burden, and Principal did not abuse its discretion on this ground.

IV.

Foster's second argument on appeal is that Principal wrongly denied benefits based on a lack of "objective or clinical evidence" of her migraines, when in fact migraines (like other conditions) are not susceptible to objective verification but must instead be verified by subjective evidence—which she claims the record shows without dispute. According to Foster, by requiring non-existent evidence from Foster, Principal abused its discretion. Yet, as Principal correctly points out, Foster's argument fails to make a critical distinction: Although the *existence* of a disability like migraines may not be denied based on impossible-to-obtain objective evidence, that is *not* true of one's *inability to work* as a result of migraines.

An administrator may rely on an absence of objective evidence of the latter (inability to work) as a basis for finding lack of disability and denying benefits. Indeed, one of the circuit opinions Foster cites—an unpublished Eleventh Circuit decision—makes precisely this distinction. *See Creel v. Wachovia Corp.*, 2009 WL 179584, at *8–9 (11th Cir. Jan. 27, 2009) (unpublished) (explaining that, "[e]ven for subjective conditions like migraines, it is reasonable to expect objective medical evidence of an inability to work" (citing *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 16 n.5 (1st Cir. 2003))). Our court has relied on this principle in a case involving a denial of a disability claim based on PTSD. In *Anderson v. Cytec Industries*, we held that a claims administrator "did not abuse its discretion by relying on the independent experts' opinion

that [the claimant] had not offered objective clinical proof showing the functional effect of his PTSD"—and this was true even when those experts "took into consideration [the claimant's] subjective complaints and the conclusions of his doctors." 619 F.3d 505, 513 (5th Cir. 2010). And we did not stop there:

> A plan administrator does not abuse its discretion by making a reasonable request for some objective verification of the functional limitations imposed by a medical or psychological condition, especially when the effects of that condition are not readily ascertainable from treatment and therapy notes—as in this case and analogous cases involving, for example, chronic fatigue syndrome. . . . Without some objective measurement of [the claimant's] functional limitations, [the administrator] had no way to determine whether his concentration was impaired to the point that he could not perform his job[.]

*Id.* at 514 (citing *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007); *Boardman*, 337 F.3d at 16–17 n.5).

We need look no further than our decision in *Anderson*, and the authorities it relies on, to decide this issue. As the district court correctly determined, Principal relied on expert reports assessing—not whether Foster subjectively experienced migraines—but instead whether and to what extent those migraines "functionally" impaired Foster in her work.

To the extent Foster criticizes Principal for relying on its experts rather than her treating physicians, our cases also reject this argument. Principal was required to base its decision on "substantial evidence," and it is immaterial whether Foster herself adduced substantial evidence (or even a preponderance of evidence) to support her view of the severity of her impairment. *See Corry*, 499 F.3d at 397–98; *Ellis*, 394 F.3d at 273. Furthermore, we have recognized that a claims administrator is not required to accept the opinions of a claimant's treating physicians regarding the severity of the claimant's condition. *See, e.g., Anderson*, 619 F.3d at 513 (explaining "the experts here

were not required to accept the opinion of [the claimant's] treating physician that his symptoms rendered him incapable of performing his job"); *Corry*, 499 F.3d at 401 ("[T]he administrator, under the established standard of review that restricts the courts, was not obliged to accept the opinion of [the claimant's] physicians. In this 'battle of the experts' the administrator is vested with discretion to choose one side over the other.").

At bottom, we see no abuse of discretion in Principal's reliance on its own treating physicians' reports detailing an absence of Foster's functional impairments.[4] Furthermore, although Principal has a "structural" conflict of interest in that it both evaluates and pays claims, *see, e.g., Truitt*, 729 F.3d at 508, we accord this factor little weight in view of the extensive investigation Principal undertook. We therefore conclude that Principal's benefits denial was supported by substantial evidence.

AFFIRMED

---

[4] In light of this conclusion, we need not address Principal's alternative argument that—should we conclude Foster's condition is disabling—Foster's claim is "capped by the Group Policy's mental health condition limitation provision," limiting benefits to a 24-month period.