# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2020

Lyle W. Cayce
Clerk

No. 19-11008

Raymond Romo,

*Plaintiff—Appellant*,

*versus*

Waste Connections US, Incorporated; Progressive Waste Solutions of TX, Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CV-570

Before King, Graves, and Oldham, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:*

Plaintiff-Appellant Raymond Romo appeals from the district court's grant of summary judgment in favor of Defendant-Appellees. Finding his appeal without merit, we affirm.

---

* Pursuant to 5TH Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Circuit Rule 47.5.4.

No. 19-11008

# I. BACKGROUND

Mr. Romo worked as an accountant in the waste-management industry for over 30 years. In 2013, he began working as a district controller for IESI MD Corporation ("IESI"), an operating subsidiary of Progressive Waste Solutions, Ltd. ("Progressive"). After one year, he was promoted to the position of area controller. In that role, his responsibilities included managing and providing analytical support for internal operations and external transactions, overseeing internal control processes and budgeting, and supervising other controllers and accountants.

In June 2016, Progressive merged with Waste Connections US, Inc. ("Waste Connections"). Prior to the merger, Mr. Romo had been designated as a participant in several retention and incentive plans. Four of those plans are at issue here: the President's Award; the 2015 Long Term Incentive Plan ("2015 LTIP"); the 2016 Long Term Incentive Plan ("2016 LTIP"); and the 2016 IESI Change in Control Severance Plan ("Severance Plan"). The Severance Plan is an Employee Retirement Income Security Act ("ERISA") plan.

Mr. Romo continued to work for IESI post-merger, but his title changed to division controller. In that role, he directed the accounting and supporting financial functions for a 13-district area. To assist with the transition to Waste Connections ownership, Mr. Romo's new direct supervisor sent another Waste Connections division controller to support and train Mr. Romo and his team. A subset of the policies and procedures on which Mr. Romo trained and that he communicated to his staff involved the importance of complying with reporting deadlines. Mr. Romo nevertheless missed multiple reporting deadlines. His direct supervisor spoke to him about that issue in January 2017, but Mr. Romo missed at least one deadline even after that conversation.

Around the same time, Waste Connections was selling its Washington, D.C., assets as part of its merger with Progressive. Those districts were part of Mr. Romo's area, and he was asked to assist with the due diligence. He did so in addition to his regular job functions but without receiving the additional support he requested. The transaction closed in mid-February 2017.

After the close of the sale, Mr. Romo remained responsible for managing accounting functions related to the transaction. Among other things, those functions involved reconciling and closing general ledger accounts. While performing those functions, Mr. Romo identified a cash balance of approximately $400,000 in a zero-balance account. Despite his knowledge of that incongruity, he signed off on the February 2017 balance sheet as complete. He did the same in March 2017, again without reconciling the variance. During that time, he did not ask for assistance or otherwise note the issue.

In April 2017, Mr. Romo, his direct supervisor, and other Waste Connections executives toured the region. While on that tour, Mr. Romo's direct supervisor discovered the variance in the zero-balance account. The supervisor investigated the discrepancy but found no supporting documentation for the cash transfers that should have taken place during the process of apportioning payments between Waste Connections and the buyer of the Washington, D.C. districts. A few days later, Mr. Romo's employment was terminated.

Three months later, counsel for Mr. Romo sent a demand letter to IESI requesting payments under the President's Award, 2015 LTIP, and 2016 LTIP (collectively, the "equity incentive plans"). Mr. Romo also sought payment under the Severance Plan. Under the terms of that plan, IESI had 90 days to determine whether benefits should be granted. Prior to the

expiration of those 90 days, the plan administrator notified Mr. Romo's counsel that she had been appointed and that she was extending the response time, in accordance with the terms of the plan, by an additional 90 days.

The plan administrator did not issue her determination within the extended response time. But 10 days after the extended deadline, she sent Mr. Romo two letters. The first denied benefits under the Severance Plan and explained the reasons for the denial. The second explained that she had also been referred the determination regarding whether to pay Mr. Romo under the equity incentive plans and that his claims under those plans were also denied. As part of those determinations, the plan administrator emphasized that Mr. Romo had been terminated for just cause as defined in the Severance Plan, the 2015 LTIP, and the 2016 LTIP.

Two months later, Mr. Romo sued Waste Connections and Progressive Texas (collectively, "Waste Connections"). He alleged that the defendants wrongly denied his claim to benefits under the Severance Plan and the equity incentive plans. Waste Connections moved for summary judgment, and the district court granted the motion in full. Mr. Romo appealed, arguing that the district court erred in (1) reviewing his ERISA claim under an abuse-of-discretion standard; and (2) granting summary judgment in favor of Waste Connections on his breach-of-contract claims. Both arguments are without merit.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*, applying the same standards as the district court. *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 274 (5th Cir. 2015) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (internal quotation marks and citation omitted). A fact "is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 134 (5th Cir. 2010) (citation omitted).

At summary judgment, all reasonable doubts must be resolved against the moving party. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

This court must address whether Waste Connections is entitled to summary judgment as to both the Severance Plan and the equity incentive plans. We conclude that it is.

### A. The Severance Plan

With respect to the Severance Plan, Mr. Romo makes two arguments: First, that the district court erred by reviewing only for abuse of discretion; second, that there was a genuine dispute as to material facts. Neither argument succeeds.

When a benefit plan governed by ERISA grants the plan administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan"—as is the case here—courts review the plan administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). While Mr. Romo contends that *de novo* review was appropriate because the plan administrator failed to render a timely decision, this court has repeatedly declined to modify the standard of review "based on the administrator's failure to substantially comply with the

No. 19-11008

procedural requirements of ERISA." *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 159 (5th Cir. 2009); *see also Wade v. Hewlett-Packard Dev. Co.*, 493 F.3d 533, 538 (5th Cir. 2007), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010) ("Wade has cited no direct authority by the Supreme Court or the Fifth Circuit dictating a change in the standard of review based upon procedural irregularities alone, and we see no reason to impose one.").[1] Our review, like that of the district court, is therefore for abuse of discretion alone.

Under that standard, "[e]ven if an ERISA plaintiff support[s] his claim with substantial evidence, or even with a preponderance, he will not prevail for that reason. Rather, it is the plan administrator's decision that must be supported by substantial evidence, and, if it is, the administrator's decision must prevail." *Foster v. Principal Life Ins. Co.*, 920 F.3d 298, 304 (5th Cir. 2019) (emphasis, citation, and quotation marks omitted). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). A plan administrator's decision is arbitrary only when it is "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (citing *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246–47 (5th Cir. 2009)).

Here, the Severance Plan provides that an employee may be fired for just cause if he

---

[1] Moreover, if the plan administrator had not substantially complied with ERISA, the appropriate remedy would be remand to the plan administrator—not a change in the standard of review. *See Lafleur*, 563 F.3d at 157 ("Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA.")

(i) willfully fails to perform his/her duties with the Company or any of its affiliates; (ii) commits theft, fraud, dishonesty or misconduct involving the property, business or affairs of the Company or any of its affiliates or in the performance of his/her duties; (iii) willfully breaches or fails to follow any material term of his or her employment agreement; (iv) is convicted of a crime which constitutes an indictable offense; or (v) engages in conduct which would be treated as cause by a court of competent jurisdiction in the jurisdiction in which the [e]ligible [e]mployee is employed.

The plan administrator's denial letter explained that she had made the following findings:

- Mr. Romo missed several key deadlines;

- "[J]ust before the termination of his employment, Mr. Romo failed to perform several key tasks that were central to an important business divestiture, including failing to keep journal entry records or any other records to account for the movement of millions of dollars of [c]ompany funds between business accounts";

- Mr. Romo's supervisor "repeatedly counseled him on the need to meet deadlines and perform as expected"; and

- "[T]here were incidents where subordinate employees of Mr. Romo experienced confusion or frustration because Mr. Romo was not responsive to their needs."

Those details, which are not in dispute, led the plan administrator to conclude that the facts fully supported a "just cause" termination under the Severance Plan, which precluded Mr. Romo from receiving severance benefits.

Given the facts before the plan administrator, her finding can hardly be characterized as arbitrary. As such, Waste Connections is entitled to summary judgment with respect to the Severance Plan claims.

## B. The Equity Incentive Plans

Mr. Romo also argues that the district court erred by granting summary judgment in favor of Waste Connections as to the equity incentive plans: the 2014 President's Award, 2015 LTIP, and 2016 LTIP. We conclude that summary judgment in favor of Waste Connections was appropriate as to these claims.

### 1. Legal Standards

"Under Texas law, the essential elements of a breach of contract claim are the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant, and damages sustained as a result of the breach." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 731 (5th Cir. 2018) (internal quotation marks and citation omitted). "A contract is not ambiguous merely because the parties have a disagreement on the correct interpretation." *REO Indus., Inc. v. Nat. Gas Pipeline Co. of Am.*, 932 F.2d 447, 453 (5th Cir. 1991). Courts are to construe contracts "'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

### 2. The President's Award

With respect to the President's Award, we conclude that Mr. Romo was not entitled to receive any shares because he was not employed on April 1, 2018, the vesting date provided in the award letter.

The September 2015 letter conferring the President's Award upon Mr. Romo stated (1) that the shares granted therein would be held in a trust until they vested on April 1, 2018; and (2) that Mr. Romo had to be employed on that date in order to receive the value of the shares. Mr. Romo was terminated in April 2017, a year before the April 2018 vesting date. He concedes that fact, but argues that the 2016 merger between Progressive and Waste Connections triggered a change-of-control provision that caused the shares to become fully vested at that time. We disagree.

The change-of-control provision appears in the text of the 2015 LTIP, which the President's Award letter incorporates. But "[i]t is a fundamental axiom of contract interpretation that specific provisions control general provisions." *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002) (citation omitted). Here, the President's Award incorporates the LTIP, but itself identifies "the specifics of the plan." Second on the list of specific provisions is that "[i]f a participant leaves prior to the completion of the three year period, all shares are forfeited except for a qualified retirement."

We therefore affirm the district court's grant of summary judgment in favor of Waste Connections as to the President's Award.

### 3. 2015 and 2016 LTIPs

Mr. Romo likewise contends that Waste Connections breached the 2015 and 2016 LTIPs by refusing to pay. We agree with Waste Connections,

9

however, that it is not required to pay because Mr. Romo was terminated for just cause.

The 2015 and 2016 LTIPs have identical "just cause" clauses, which read:

> "Just Cause" has the meaning set out in the employment agreement of the Participant, if applicable, and otherwise means the Participant (i) willfully fails to perform his duties with the Corporation; (ii) commits theft, fraud, dishonesty or misconduct involving the property, business or affairs of the Corporation or any of its affiliates or in the performance of his/her duties: (iii) willfully breaches or fails to follow any material term of his or her employment agreement; (iv) is convicted of a crime which constitutes an indictable offence; or (v) engages in conduct which would be treated as cause by a court of competent jurisdiction in the jurisdiction in which the Participant is employed.

Mr. Romo "concedes [that] accounting mistakes were made" but alleges that a genuine dispute as to a material fact exists because "the principal problem was brought on by Defendants' intentional understaffing of Plaintiff's [d]ivision by dumping the jobs of multiple people onto Plaintiff, their refusal to retain key personnel who could have avoided the errors, and mistakes by its own staff which were never punished." However, he cites no evidence in support of these statements, which are therefore inadequate. *See Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) ("Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment; the plaintiff [can]not rest on his allegations . . . to get to a jury without any significant

probative evidence tending to support the complaint." (quotation marks and citation omitted)).

Mr. Romo further argues that "there is reason to doubt the [d]efendants' stated reasons" for firing him, as "age related comments and a practice of firing older workers to be replaced by cheaper and younger employees casts doubt on the credibility of Defendants' denial of benefits." Mr. Romo cites no case law supporting his attempt to graft the pretext analysis from the Age Discrimination in Employment Act into a breach of contract claim. Moreover, the deposition testimony and affidavit he cites do not provide any support for his own conclusory statements. His argument therefore fails. *See E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir. 1984) ("[P]retext cannot be established by mere 'conclusory statements' of a plaintiff who feels he has been discriminated against." (citation omitted)); *Nat'l Ass'n of Gov't Emps.* 40 F.3d at 713 ("Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment[.]"). Waste Connections has satisfied its burden and is entitled to summary judgment as to the LTIPs.

## IV. CONCLUSION

The district court's entry of summary judgment in favor of Defendant-Appellees is AFFIRMED.